UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

PERLA BURSZTEIN,

                                  Plaintiff,

                -against-

BEST BUY STORES, L.P. and BEST BUY CO., INC.,

                                  Defendants.

-----------------------------------------------------------------X

**20-cv-00076 (AT) (KHP)**

<u>**OPINION & ORDER ON MOTION**</u>
<u>**FOR SANCTIONS**</u>

**KATHARINE H. PARKER, United States Magistrate Judge:**

       Plaintiff Perla Bursztein moves to sanction Defendants Best Buy Stores, L.P. and Best Buy

Co., Inc., (collectively, "Best Buy") pursuant to Federal Rule of Civil Procedure 37 ("Rule 37") for

Defendants' failure to comply with discovery obligations and spoliation of evidence.  Plaintiff

bases her motion on Best Buy's failure to produce video surveillance footage showing the area

of Plaintiff's fall and certain other relevant documents despite the Court's Rule 26(f) discovery

order.  Defendants oppose the motion and also note Plaintiff's misconduct throughout

discovery.  Plaintiff, in her reply, disputes several of Defendants' representations.  The Court

addresses each of the parties' key arguments in the sanctions analysis below.

**BACKGROUND**

### I.    *General Background*

       On November 10, 2017, Plaintiff alleges that she tripped and fell over a raised piece of

metal on the landing at the top of an escalator in a New York City Best Buy Store.  Plaintiff

further alleges that, as a result of the fall, she seriously injured her shoulder such that she

required surgery.  Immediately after the fall, Plaintiff's husband recorded two short video clips

on his phone capturing the surrounding area in the store.  (ECF No. 49 at 7.)  According to

Plaintiff, while waiting for EMS workers to arrive a Best Buy employee told Plaintiff that the

hazardous condition had been present for "a couple of weeks" and that he had reported the

issue to maintenance, although it had yet to be repaired.  (ECF No. 43-10 at 49.)  After being

examined at the scene, Plaintiff decided not to go to the hospital and flew home to Florida

before seeking further medical attention. (ECF No. 48 at 22.)

## II.    *Discovery Timeline*

Discovery in this case has been plagued by obstruction, lack of communication, and

boilerplate objections.  Plaintiff's initial discovery requests served on April 1, 2020 were met

with silence.  (ECF No. 43 ¶ 6.)  These initial requests included requests for video surveillance

footage; inspection, maintenance, and repair records for the location of the fall; and Best Buy's

customer safety policy—all of which are at issue in the instant motion.  (ECF No. 43-5.)  On May

13, 2020 – six weeks after the initial requests – Plaintiff sent Best Buy a follow-up letter

requesting responses to her discovery demands.  (ECF No. 43 ¶ 6.)  On May 27, 2020, Best Buy

served its responses, which consisted of three pages of general objections and four pages of

boilerplate specific objections to the individual requests.  Best Buy also asserted that it did not

possess additional responsive documents to Plaintiff's requests.  (*See generally* ECF No. 43-7.)

Only two documents were produced to Plaintiff: the Safety Incident Review for Plaintiff's

accident and a Facilities Services Agreement.  (*Id.*)  Similarly, Best Buy's answers to Plaintiff's

interrogatories consisted of boilerplate objections with limited helpful information.  (*See*

*generally* ECF No. 43-8.)

On June 8, 2020, twelve days after receiving Defendants' response, Plaintiff sent

Defendants a deficiency letter specifying which responses were deficient and why and

requesting that the deficiencies be cured within ten days.  (ECF No. 43-9.)  Plaintiff was, once

again, met with silence.  On June 23, 2020, Plaintiff's counsel followed up with Best Buy

requesting a response to the deficiency letter.  (ECF No. 43-11.)  On June 30, 2020 Plaintiff's

counsel followed up again.  (ECF No. 43-12.)  Then, on July 8, 2020, a month after receiving the

deficiency letter, Defendants responded.  (ECF No. 43-13.)  In their response, Defendants

offered only minor clarifications; they maintained that they do not possess surveillance footage

of the accident, that they do not maintain records of inspection, and that they do not maintain

any schedule of inspection or maintenance.  (*Id.*)  No additional documents were produced and

no additional interrogatory responses were provided.  (*Id.*)  Notwithstanding these alleged

deficiencies, Plaintiff agreed to table the disputes until after deposing Best Buy's 30(b)(6)

witness.  (ECF No. 43-14; ECF No. 43-17 at 2.)

The 30(b)(6) deposition took place on August 13, 2020.  Best Buy produced Spencer

Stanfield, the general manager of the store in which the incident took place, to testify on behalf

of Best Buy.  (ECF No. 43-16.)  Despite Defendants' obligation to prepare Stanfield to testify on

matters outlined in the deposition notice, Stanfield was not prepared to testify about numerous

pertinent topics.  (*See* ECF No. 43-15.)  In particular, Stanfield was unable to testify about: (1)

the installation, maintenance, and repair protocols of the escalator where the accident took

place; (2) the store's maintenance and inspection policy and related records; (3) the electronic

surveillance system used at the store; or (4) complaints and reports concerning the area

surrounding the escalator (ECF No. 43-16 at 13-18,)  all of which were listed in the deposition notice.  (ECF No. 43-15.)

However, Stanfield was able to testify about certain other matters.  He testified (1) that Best Buy employees received copies of policies and procedures for store safety (ECF No. 43-16 at 38-43, 68); (2) that employees were also trained through on-line videos (*id.* at 40-41); (3) that all repair and maintenance requests were logged on the Facilities Request System (*id.* at 50-51, 58); (4) that surveillance footage of the incident exists; and (5) that Stanfield preserved that footage personally (*id.* at 76-77).  These representations directly conflicted with Defendants' discovery responses, outlined above.

On August 27, 2020, Plaintiff served post-deposition demands seeking the surveillance footage, the employee training materials concerning safety procedures, and the relevant entries in the Facilities Request System.  (ECF No. 43-18.)  Two months later, on October 28, 2020, Defendants served their responses.  (ECF No. 43-22.)  The responses were laden with the same boilerplate objections referenced above.  Annexed to the responses were numerous invoices for escalator maintenance and repairs carried out between June and November 2017. (*Id.*)  Best Buy also asserted that the training materials, procedures for store maintenance and inspection, and Facilities Request System entries were no longer in Best Buy's custody and control.  (*Id.*)  Defendants further represented that Stanfield was the person responsible for routing facilities requests to the proper remediating team, which directly contradicted Stanfield's own deposition testimony.  (*Compare* ECF No. 43-22 ¶ 10 *with* ECF No. 43-16 at 52.) Finally, in response to Plaintiff's demand for the video surveillance footage, Defendants

represented that Best Buy did not possess any such footage and that Stanfield was mistaken in his testimony. (ECF No. 43-22 ¶ 12.)[1]

On December 8, 2020 Defendants served Plaintiff's counsel with a letter in which they reiterated that Best Buy produced a safety inspection document, that no training materials or written guidelines were in effect at the time of the accident, and that Best Buy had no more documents to produce.  (ECF No. 43-23.)  Plaintiff then filed the instant motion on December 23, 2020.  (ECF No. 42.)

On January 8, 2021, Stanfield executed a sworn affidavit claiming that he had misunderstood the question concerning the video footage during his deposition.  In the affidavit, he explains that he understood Plaintiff counsel's question to relate to his general practice of saving surveillance footage as opposed to the specific surveillance footage at issue in this case. (ECF No. 48-2.)  Stanfield's affidavit does not address any of the other inconsistencies between his deposition testimony and Best Buy's prior discovery responses.

**LEGAL STANDARD**

Plaintiff alleges that Best Buy violated a discovery order and accuses Best Buy of spoliation of evidence.  Both allegations and the related requests for sanctions are governed by Federal Rule of Civil Procedure 37.  The relevant subsections are discussed in turn below.

### I.      *Rule 37(b)(2)*

---

[1] Confusingly, on the very same day, Defendants' counsel represented that he was endeavoring to obtain the surveillance footage from Best Buy in a status letter filed with the Court.  (ECF No. 32.)

Rule 37(b)(2) states that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."  Such orders may include: (1) directing that matters addressed in the order be taken as established by the prevailing party; (2) prohibiting the sanctioned party from supporting or opposing claims or defenses or from introducing evidence; (3) striking pleadings in whole or in part; (4) staying the proceedings until the order at issue is obeyed; (5) dismissing the action in whole or in part; (6) entering judgment against the disobedient party; and (7) treating the failure to obey the orders at issue as contempt of court (except where the orders direct the party to submit to a physical or mental examination).  Fed. R. Civ. P. 37(b)(2)(A).  The Rule also provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

Discovery sanctions are designed to serve several purposes: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general.  *See Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *see also Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 147–49 (2d Cir. 2010) (district court did not err by imposing default judgment on defendants who willfully deleted and refused to produce relevant documents); *Update Art, Inc. v. Modiin Publ'g, Ltd.*,

843 F.2d 67, 70–71 (2d Cir. 1988) (granting summary judgment to plaintiff was an appropriate sanction where defendant engaged in extreme dilatory tactics).

When determining whether sanctions should be imposed under Rule 37, courts in the Second Circuit weigh the following non-exhaustive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (alteration in original) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). No single factor is dispositive and "they need not each be resolved against the party challenging the district court's sanctions . . . to conclude that those sanctions were within the court's discretion." *See World Wide Polymers*, 694 F.3d at 159 (quoting *Southern New England Tel. Co.*, 624 F.3d at 144).

The imposition of sanctions lies within the sound discretion of the court. *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994). "When faced with a 'breach of a discovery obligation [that] is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction.'" *Doe v. Delta Airlines Inc.*, 672 F. App'x 48, 50 (2d Cir. 2016) (alteration in original) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002), superseded by statute on other grounds as stated in *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 495 (S.D.N.Y. 2016)). However, when considering whether to impose discovery sanctions, the Court's discretion is limited to the imposition of sanctions that are both "just" and "commensurate" in severity with the non-compliance. *See*

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2017 WL 3671036, at *21 (S.D.N.Y. July 18, 2017), adopted by 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).  Harsh sanctions, such as dismissal or default, are reserved for extreme situations, such as those involving "willfulness, bad faith, or any fault by the non-compliant litigant." *Agiwal*, 555 F.3d at 302 (internal quotation marks and citation omitted) (sanctions against pro se litigant appropriate where he refused to follow the orders issued by the presiding magistrate judge over a six-month period).  Although courts "should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future," courts are "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Joint Stock Co. Channel One Russia Worldwide*, 2017 WL 3671036, at *21 (internal quotation marks and citations omitted); *see also Urbont v. Sony Music Entm't*, No. 11-cv-4516 (NRB), 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) ("deliberate and persistent noncompliance will render lesser sanctions inappropriate") (quoting *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (alterations omitted)).

## II.      Rule 37(e)

"Rule 37(e) provides the sole source to address the loss of relevant ESI that was required to be preserved but was not because reasonable steps were not taken, resulting in prejudice to the opposing party."  *DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12-cv-50324, 2021 WL 185082, at *75 (N.D. Ill. Jan. 19, 2021).  The rule is best envisioned as a

flowchart.  *See id.* (providing a visual flowchart).  The Rule has five threshold requirements: (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery.  Fed. R. Civ. P. 37(e); *DR Distributors, LLC*, 2021 WL 185082, at *76.  If any of these requirements are not met, sanctions are inappropriate under Rule 37(e).  Furthermore, absent a showing of "intent to deprive another party of the information's use in the litigation," the sanctions enumerated under subsection (2) of Rule 37(e) are not available.

Sanctions for spoliation without a showing of intent to deprive are governed solely by subsection (1).  *Simon v. City of New York*, No. 14-cv-8391 (JMF), 2017 WL 57860, at *7 (S.D.N.Y. Jan. 5, 2017).  Sanctions available under Rule 37(e)(1) may only be imposed upon a finding of prejudice to the moving party, and "[c]are must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2)."  Fed. R. Civ. P. 37(e) (advisory committee's note to 2015 amendment).  Available sanctions under Rule 37(e)(1) may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument."  *Id.*  Ultimately, "[t]he decision of what type of sanction is appropriate in a given case is left to the sound discretion of the district court."  *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017) (cleaned up).

The harsher sanctions permitted under Rule 37(e)(2) – which require a finding of "intent to deprive" – include adverse inferences, adverse jury instructions, and default judgement. Fed. R. Civ. P. 37(e) (advisory committee's note to 2015 amendment).  Unlike subdivision (e)(1), subdivision (e)(2) does not "include a requirement that the court find prejudice to the party deprived of the information," as "the finding of intent [to deprive] . . . support[s] . . . an inference that the opposing party was prejudiced by the loss of information." *Id.*  Although Rule 37(e)(2) does not specify the standard by which the "intent to deprive" must be established, given the severity of the sanctions permitted under that provision of the Rule courts in this Circuit have found the standard to be clear and convincing evidence.  *See Cat3, LLC*, 164 F. Supp. 3d at 499 (finding that, where a party seeks "terminating sanctions" pursuant to Rule 37(e)(2), "it is appropriate to utilize the clear and convincing standard" in making a finding of intent to deprive); *see also Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-cv-9363 (ALC) (DF), 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018).

"In addition to any other sanctions expressly contemplated by Rule 37(e), as amended, a court has the discretion to award attorney's fees and costs to the moving party, to the extent reasonable to address any prejudice caused by the spoliation." *Lokai Holdings LLC*, 2018 WL 1512055, at *9.

### ANALYSIS

The instant motion concerns four categories of evidence: (1) video surveillance footage, (2) store safety training materials, (3) Facilities Request System requests, and (4) copies of the inspection report for the escalator.  The first three categories of ESI are particularly relevant to

the instant motion for sanctions under Rule 37(e).  First, however, the Court must address

several preliminary arguments before assessing the merits of Plaintiff's motion.

### I.    Rule 26(f) Order Provides Sufficient Basis for Plaintiff to Seek Sanctions

On April 2, 2020, Judge Torres entered a Rule 26(f) scheduling order directing that all

fact discovery shall be completed by August 1, 2020 and requiring the parties to conduct

discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules.  (ECF No.

24.)  Plaintiff bases its motion for sanctions, in part, on this order, arguing that Defendants'

delay and stonewalling violate the scheduling order's broad directives.  Best Buy, on the other

hand, argues that Plaintiff should be barred from seeking sanctions because Plaintiff neglected

to file a motion to compel before making this instant application.  Defendants argument is

unavailing.  Rule 37(b)(2)(A) explicitly provides that "[i]f a party . . . fails to obey an order to

provide or permit discovery, including an order under Rule 26(f)" sanctions may be warranted.

Thus, Rule 37(b)(2)(A) provides an independent ground for sanctions and a Rule 37(a) motion to

compel is not, as Best Buy apparently contends, a prerequisite to Plaintiff's motion.  To be sure,

the instant dispute might have been resolved if Plaintiff filed a motion to compel earlier in the

litigation.  However, the Rule 26(f) order itself – if found to have been violated – would provide

an ample basis for this Court to impose sanctions at this juncture.

### II.    Unclean Hands Doctrine does not Bar Plaintiff's Motion

Next, Best Buy argues that Plaintiff comes to this Court with unclean hands and is

therefore barred from seeking sanctions.  The equitable doctrine of unclean hands is an

"ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad

faith relative to the matter in which he seeks relief." *Republic of Turkey v. Christie's Inc.*, No. 17-cv-3086 (AJN), 2021 WL 1089487, at *1 (S.D.N.Y. Mar. 22, 2021) (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). A finding of bad faith is required to justify invocation of the unclean hands doctrine. *See Deere & Co. v. MTD Holdings, Inc.*, No. 00-cv-5936 (LMM), 2004 WL 1794507, at *2 (S.D.N.Y. Aug. 11, 2004) ("[i]t is undisputed that an unclean hands defense requires a finding of bad faith"). Courts have been split, however, on whether this doctrine requires a finding of injury caused by the inequitable conduct. *Chevron Corp. v. Salazar*, No. 11-cv-0691 (LAK), 2011 WL 3628843, at *10 (S.D.N.Y. Aug. 17, 2011).

According to Best Buy, Plaintiff has acted inequitably in this case by failing to provide Best Buy with certain documents. Specifically, Best Buy claims that Plaintiff has not produced invoices, receipts, or other medical records showing Plaintiff's damages and has failed to provide the video footage taken by Plaintiff's husband immediately after the fall. (ECF No. 48 at 11-12.) Further, Best Buy argues that these documents are central to Best Buy's defenses and that Plaintiff's failure to provide these documents and information has stifled discovery in this case. Even assuming that Plaintiff has access to these materials, Best Buy's unclean hands defense fails because Best Buy has not demonstrated that Plaintiff acted in bad faith.

Moreover, the evidence indicates that many of the documents allegedly withheld from Best Buy were produced by Plaintiff in mid-August of 2020, well before the close of discovery in this case. (ECF No. 36; ECF No. 49-3; ECF No. 49-4.) Plaintiff's counsel further maintains that certain outstanding receipts have not been exchanged because counsel is still waiting for

Plaintiff to locate and provide them.  (ECF No. 49 at 6 n.5.)  While both parties have been uncooperative throughout discovery, the conduct alleged falls short of bad faith.  Therefore, Plaintiff's motion is not barred by the unclean hands doctrine.

### III.     The Pending Motion for Summary Judgment

Under Rule 37, this Court has broad discretion to issue sanctions which could affect Defendants' pending motion for summary judgement.  While the motions are somewhat related and while a ruling on one could certainly impact the scope or import of the other, that is no bar to the imposition of sanctions at this juncture.  Indeed, the purpose of the Court's sanctions power is to deter noncompliance in this specific case *and* in litigation in general. Therefore, if sanctions are warranted, they should be imposed.

### IV.     Defendants' Credibility

Defendants have thwarted and disrupted discovery throughout the life of this case.  As already outlined above, Defendants repeatedly flouted their discovery obligations, failed to promptly communicate with opposing counsel, and repeatedly lodged baseless boilerplate objections to Plaintiff's discovery requests.  Best Buy's attempts to use those objections to avoid producing documents are a "paradigm of discovery abuse."  *See Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009).  Further, courts in this District have previously said that general objections should rarely be used, unless the objections specifically apply to each document request at issue.  *See Fischer v. Forrest*, No. 14-cv-1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017).  The vast majority of Best Buy's responses in this case start with the phrase "Defendant Best Buy objects to this demand as vague,

ambiguous, overly broad, unduly burdensome and/or oppressive.  Furthermore, please refer to

Best Buy's General Objections outlined above.  Defendant moreover objects to materials sought

which were prepared in contemplation of litigation," or some variation thereof.  (*See, e.g.*, ECF

Nos. 43-7 - 43-8.)  In fact, even where Defendants did see fit to provide a response, the

response follows these boilerplate objections.  Other issues, such as Best Buy's failure to

prepare Stanfield to testify about matters for which he was presented at the 30(b)(6)

deposition as well as other intentional dilatory tactics have also crept up.  Tellingly, Defendants

only produced three or so relevant documents in discovery.

Now, faced with the instant motion for sanctions, Defendants seek to explain and justify

these deficiencies, but their explanations strain credulity.  First, Defendants claim that they

never received Plaintiff's preservation letter and were therefore under no obligation to

preserve evidence.  (ECF No. 48 at 6-7.)  This is not true.  The letter was sent by Plaintiff on

November 22, 2017 via certified mail and Plaintiff received a signed return receipt, which has

been submitted to the Court.  (ECF No. 43-1.)  Receiving that notice placed Best Buy (and its

agents) on notice to preserve all documents potentially relevant to this litigation.  Moreover, on

December 5, 2017 – eleven days after the preservation letter was delivered and less than a

month after the accident took place – Best Buy's claims administrator contacted Plaintiff's

counsel to discuss the case.  (ECF No. 49-1.)  Thus, it is clear that Defendants were promptly

notified of this lawsuit.

Defendants also rationalize their delay in obtaining Stanfield's clarifying affidavit by

claiming that Plaintiff failed to make the transcript of the deposition available to the

14

Defendants.  However, the transcript of the deposition was emailed to Defendants on

September 28, 2020, on the same day it was requested and well in advance of January 8, 2021,

the date the affidavit was ultimately produced. (ECF No. 49-2; ECF No. 48-2.)  Defendants'

counsel's office responded to that email, asking for a differently formatted version of the

transcript, and Plaintiff's counsel promptly supplied it.  (ECF No. 49-2.)

Finally, Defendants misrepresent the nature of the documents they have produced.

Defendants produced the Weekly Safety Checklist and a set of instructions for how to follow

that list.  (ECF No. 48-3; ECF No. 48-4.)  According to Defendants, the checklist demonstrates

that Best Buy "performed numerous safety inspections."  (ECF No. 48 at 4.)  However, the

checklist is merely an unfilled form and, therefore, it does not tend to demonstrate that the

procedures contained therein were followed at the store in question.  Furthermore, the bottom

of the checklist explicitly states that, once filled out, the checklist must be retained for one year

in the Asset Protection Office.  (ECF No. 48-3.)  Further still, the documents explicitly

acknowledge that the checklist is a discoverable document and detail Best Buy's document

retention policy, which provides that safety related documents are to be retained for seven

years.  (ECF No. 48-4 at 17.)  Therefore, these documents suggest two possibilities: either Best

Buy was violating its own policy by not conducting weekly safety checks in the store, or Best

Buy possesses additional documents (such as the filled-out checklist relevant to Plaintiff's

claims) that were withheld from Plaintiff or destroyed before they could be produced.

### V.     Rule 37(e) Analysis – Video Surveillance Footage, Facilities Request System Entries, and Safety Training Materials were Destroyed

As noted above, in order to determine whether sanctions for the spoliation of ESI are appropriate, the Court must assess whether: (1) the information at issue is electronically stored; (2) there was a duty to preserve the ESI; (3) the relevant ESI should have been preserved while litigation was anticipated; (4) the ESI was lost because a party failed to take reasonable steps to preserve it; and (5) the lost information can be replaced through additional discovery.  Fed. R. Civ. P. 37(e); *DR Distributors, LLC*, 2021 WL 185082, at *76.

First, the surveillance footage and Facilities Request System Entries are clearly ESI. Additionally, based on the deposition testimony of Stanfield, employees underwent structured, online trainings as part of their onboarding process.  (ECF No. 43-16 at 40-41).  Therefore, the training materials are also, at least in part, ESI.

Second, as explained in further detail above, Best Buy received Plaintiff's preservation letter, which advised Best Buy of imminent litigation and put it on notice that documents relating to Plaintiff's fall had to be preserved.  There was, therefore, a duty to preserve this ESI.

The ESI at issue is also highly relevant to the case.  Of course, any video footage of the fall itself would be relevant.  Further, the Facilities Request System entries have the potential to show how long the defect existed prior to the accident and how long Best Buy was aware of the safety hazard.  The training materials are also potentially relevant as they evidence the steps Best Buy employees should have taken to remedy any hazardous conditions around the escalator.

The question of whether the ESI was lost because Best Buy failed to take reasonable steps to preserve it is somewhat more complicated.  Best Buy has repeatedly asserted that it

never possessed the documents sought by Plaintiff.  That said, Best Buy's 30(b)(6) witness

testified to the contrary.  When asked whether he had "actually" viewed the footage at issue in

this case, Stanfield responded that he had viewed the video and that he took steps to preserve

the video sometime in the month thereafter.  (ECF No. 43-16 at 76-77.)  Moreover, Stanfield

affirmatively represented that he saw "a trip" in the video.  (*Id.*)  Later on in the deposition

Stanfield made a similar, and perhaps more concrete statement to the same effect:

> Q. And at some point, you did review the footage and saw her tripping
> and falling, correct?
> A. Yes.

(*Id.* at 84.)  To be sure, Stanfield subsequently executed an affidavit to recant this testimony.

However, the questions posed to Stanfield and his answers were abundantly clear.  Moreover,

the affidavit was submitted months after the close of discovery in this case and approximately

five months after Stanfield's deposition.  Stanfield's sworn testimony, the attempted

recantation of that testimony through an affidavit filed at the eleventh hour, and Best Buy's

pattern of dilatory and obstructive conduct throughout discovery lead me to find that the video

footage likely existed at one point and that Best Buy had a duty to preserve that footage,

pursuant to both the litigation hold it received and its own internal policies.  Furthermore,

Stanfield confirmed that the Facilities Request System entries and the training materials existed

as well.  Therefore, all of the ESI in question did exist and should have been preserved in

anticipation of this litigation.

Finally, Best Buy apparently concedes that this ESI cannot be obtained through

additional discovery.  While Plaintiff could have pursued additional documents from, for

example, Best Buy's escalator service vendor, there is no evidence that the vendor would have access to the surveillance footage, the training materials, or entries in Best Buy's Facilities Request System.

## VI.    Rule 37(e) Analysis – Intent

For the Court to impose sanctions under Rule 37(e)(2), the Court must find that Best Buy destroyed the ESI with the intent to deprive Plaintiff of the information therein.  Plaintiff has offered limited evidence of Defendants' intent in her briefing.  On the other hand, the Court has already outlined above Best Buy's extensive misconduct thus far in the litigation.  Therefore, this case presents a close call on the issue of intent.

Other courts in this Circuit have inferred an "intent to deprive" through circumstantial evidence where the data loss could not be "credibly explained" other than by bad faith.  *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017).  *Moody* involved a train accident where the defendants' foreman uploaded data from the incident onto a laptop and then purportedly uploaded that data onto a backup server.  The data was not properly loaded onto the backup server and was eventually lost when the foreman's laptop was recycled by the defendants.  Given the importance of the evidence, the Court held that the defendants' conduct was "so stunningly derelict as to evince intentionality."  *Id.* at 432.

Although Best Buy has not offered a single credible excuse for losing the surveillance footage or the other ESI at issue, its conduct does not compare to the more proactive misconduct in *Moody*.  Whereas in *Moody* the defendants actively erased the crucial data for the litigation, Plaintiff here has not provided any evidence that Best Buy affirmatively deleted

18

the footage on purpose.  Although sanctions may be warranted on other grounds, it is unclear if

Best Buy engaged in the tactics outlined *supra* to intentionally deprive Plaintiff of evidence or if

the loss of ESI is simply the product of incompetence.  Moreover, given the contradictions

between Stanfield's deposition testimony and subsequent representations by counsel, it is also

unclear if Defendants have been forthcoming with their attorneys concerning the documents

actually in their possession.  Therefore, because Plaintiff bears the burden of proving such

intent by clear and convincing evidence, I find that Rule 37(e)(2) sanctions are inappropriate at

this time.

### VII.    Sanctions and Attorney's Fees are Appropriate

Absent a basis for more severe sanctions under Rule 37(e)(2), the Court can issue

appropriate sanctions for spoliation under Rule 37(e)(1) if Plaintiff is prejudiced by the loss of

information.  Under New York Law, "[t]o impose liability upon a defendant in a trip-and-fall

action, there must be evidence that a dangerous or defective condition existed, and that the

defendant either created the condition or had actual or constructive notice of it." *Habecker v.*

*KFC U.S. Props., Inc.*, 928 F. Supp. 2d 648, 654 (E.D.N.Y. 2013) (quoting *Sermos v. Gruppuso*, 95

A.D.3d 985, 944 N.Y.S.2d 245, 246 (2d Dep't 2012)).  In this case, Best Buy failed to preserve

and produce the surveillance footage and the Facilities Request System entries, as outlined in

detail above.  Moreover, Stanfield affirmatively testified at his deposition that he viewed that

footage and that any employee who noticed something wrong with the escalator would have

logged the hazard in the Facilities Request System.  Plaintiff also alleges that the Best Buy

employee who filled out the accident report on the date of the incident told Plaintiff that the

hazardous condition had been present for weeks.  Thus, the missing ESI is the primary evidence that Plaintiff would otherwise rely on to show that Best Buy had actual or constructive notice of the alleged dangerous condition near the escalator and that Best Buy was negligent in failing to address the alleged hazard.  Under these circumstances, I find that the loss of this ESI prejudices Plaintiff.

By failing to produce surveillance footage, facilities records, and training materials, Defendants have improperly strengthened their case against Plaintiff.  While the Court finds that Best Buy should not be precluded from introducing any evidence at this time, Plaintiff should be permitted to present evidence at an eventual trial regarding the spoliation of liability-related ESI and whether such ESI ever existed in the first place, to the extent that any such evidence exists.  *Karsch v. Blink Health Ltd.*, No. 17-cv-3880 (VM) (BCM), 2019 WL 2708125, at *27 (S.D.N.Y. June 20, 2019) (holding presentation of evidence at trial regarding spoliation sufficient to address the evidentiary imbalance created by a destroyed server containing relevant data).  Plaintiff should also, of course, be permitted to submit evidence to an eventual jury concerning Stanfield's initial deposition testimony regarding the surveillance footage.

Additionally, I find that monetary sanctions are particularly appropriate in this case to compensate Plaintiff for the time and resources spent because of Defendants' dilatory conduct.  Fed. R. Civ. P. 37; *see also R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 52-53 (S.D.N.Y. 2010) ("[c]osts, including attorney's fees, are appropriate when a defendant has unjustifiably destroyed evidence that it was under a duty to preserve, causing the plaintiff to expend time and effort in attempting to track down the relevant information") (internal quotation marks omitted).  Bust

Buy's excuses and defenses to Plaintiff's sanctions motion contradict the evidence before the Court.  (*See* Section IV *supra*.)  In short, as already shown above, Best Buy has not taken its discovery obligations seriously, which necessitated the instant motion.  Accordingly, Best Buy shall be liable for Plaintiff's fees and costs incurred in briefing the instant motion for sanctions.

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion for sanctions (ECF No. 42) is hereby GRANTED in part and DENIED in part.  By May 31, 2021 Plaintiff's counsel shall file a short motion with the Court providing verified attorney time records attributable to the sanctions motion.  The Court will then review the application and determine whether the requested fees are reasonable.

**SO ORDERED.**

DATED:      New York, New York
            May 17, 2021

_____
KATHARINE H. PARKER
United States Magistrate Judge